COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Frank and Clements


CHRISTOPHER SHAWN HARRIS

                                                    MEMORANDUM OPINION[*]
v.        Record No. 0741-04-3                           PER CURIAM
                                                      OCTOBER 5, 2004
CAMPBELL COUNTY DEPARTMENT
 OF SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                               J. Samuel Johnston, Jr., Judge

              (Mark B. Arthur; Fralin, Feinman, Coates & Kinnier, P.C., on brief),
              for appellant.

              (David W. Shreve, County Attorney, on brief), for appellee.

              (Kristin B. Wright; Overby, Hawkins, Selz & Wright, on brief),
              Guardian *ad litem* for the minor children.


        Christopher Shawn Harris, father, appeals the trial court's decision terminating his parental

rights to his two minor children.  Father contends the evidence was insufficient to support the

termination of his parental rights pursuant to Code § 16.1-283(B)(1) because the court erred in

finding that he failed to follow through with recommended and available treatment.  Father also

contends the evidence was insufficient to support the termination of his parental rights pursuant to

Code § 16.1-283(B)(2) and 16.1-283(C) because the court erred in finding that he was unwilling or

unable within a reasonable amount of time to substantially remedy the conditions requiring that the

children remain in foster care.  Upon reviewing the record and briefs of the parties, we conclude

that this appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.

See Rule 5A:27.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence established that when the children initially entered the foster care system, they had been living with their mother, Tammy Davis, while appellant was incarcerated for driving under the influence, third or subsequent offense, and for driving after having been declared a habitual offender. Karen Tinsley, a foster care worker, initially worked with Davis. After appellant was released from incarceration in July 2002, Tinsley "set him up" with Comprehensive Family Services and offered him psychological testing, parenting classes, and visitations with the children. Appellant was attending weekly AA meetings; other services relating to alcohol were not offered by Tinsley because that matter was being handled through appellant's probation and it was her "sense" that appellant had not been drinking since his release from incarceration.

Dr. Andrew Anderson, a clinical psychologist, performed a psychological evaluation of appellant and determined that appellant's limited understanding of child development and principles of parenting posed a risk to the children. Anderson also noted the additional risk of appellant's history of alcohol abuse, and noted that if appellant drank as much alcohol as he said he did, he would be incapacitated a substantial amount of time. Appellant acknowledged he had never sought treatment for his alcohol abuse. At his first appointment with Anderson, appellant told Anderson he had not been drinking for twenty-five months. On November 9, 2002, before his next appointment with Anderson, appellant was seen drinking and driving and was involved in an altercation with Davis. Appellant moved frequently and failed to keep his probation officer apprised of where he actually lived or worked. Appellant failed to provide verification of his attendance at AA meetings as required by his probation officer.

Michele Chaffin, a Comprehensive Family Services employee, made an unannounced visit on November 9, 2002 to the residence where appellant and Davis were having an unsupervised visit with the children. Appellant was not there but when he returned, he smelled of alcohol, was unsteady on his feet, slurred his words and made nonsensical conversation. Chaffin left the residence to avoid alarming appellant or the children and called her supervisor, Desiree Blankenship. While Blankenship waited to meet Chaffin at a nearby convenience store, she saw appellant "whiz" into the store's parking lot and park in an angle rather than in a parking "slot," leave his car running while he entered the store to buy beer, and then return to his car and drive away.

Knowing that appellant had left the residence, Blankenship and another social worker, Crystal Roach, removed the children from the residence and returned them to their foster home. After the children were removed from the residence, Davis admitted to Chaffin that appellant had never stopped drinking and that he had been abusive, resulting in a protective order being issued against appellant. Davis told Roach that appellant had been drinking since he was released from jail and that she was "scared to say something" because it might prevent them from getting their children back.

Regina Wright, another Comprehensive Family Services employee, worked primarily with Davis but did advise appellant about specific services available to him and provided him with information. Wright stated that their role "was not to really do things for him so much but to provide him with information, encourage them and then it's up to them to follow through with what they need to do." Knowing that appellant needed to attend AA meetings according to appellant's probation officer, Wright provided scheduling information about AA meetings.

Roach, who worked with the family after Wright, encouraged appellant to take a parenting class but appellant declined. Appellant stated that "he had done everything that Social Services had

asked him to do" and that "he felt it was not necessary to do anything else" and that he was "very unavailable." Roach made recommendations to appellant but understood that appellant's probation officer "worked out" the recommendations and treatments for appellant's alcohol problem.

On November 21, 2002, case worker Robbie Irby began working with appellant and was responsible for overseeing the case and managing the services. Due to appellant's history of alcohol abuse, Irby offered him the Arise residential program. Irby agreed to coordinate that program and accompany appellant to the initial intake appointment. Irby told appellant the program would help him and that it was important for him to participate in the program in trying to get his children back. Appellant refused, stating that he already attended AA meetings and did not need a residential program. Appellant also refused the individual counseling offered, but did attend parenting classes. Irby asked appellant about the incident on November 9, 2002, and appellant denied that the incident had occurred.

Deborah Maxey, a family therapist who worked with appellant's four-year-old child, advised Social Services that the child's visits with appellant should be stopped because the child was traumatized and became disassociated when appellant was mentioned. When Maxey told appellant of her recommendation, appellant said he had a right to see his child and reacted as if he was being victimized. Maxey explained that this was not about his rights, but was about what was happening to the child and asked appellant for his help. Maxey asked seven times whether appellant could think of anything he could have done that contributed to the child being in foster care, and seven times appellant did not answer the question but continued talking about "his rights." Maxey opined that appellant was only concerned about himself and did not seem to care about what was happening to his child.

<u>Analysis</u>

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." <u>Farley v. Farley</u>, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463.

Pursuant to Code § 16.1-283(B), the trial court may terminate a parent's parental rights if the neglect or abuse suffered by the children presents a serious threat to their life, health or development. Proof that the parent is addicted to intoxicating liquors seriously impairing his parental ability and "without good cause, has not responded to or followed through with recommended and available treatment that could have improved the capacity for adequate parental functioning" is *prima facie* evidence of the conditions set out in Code § 16.1-283(B)(2). Appellant clearly has an alcohol problem. He had been incarcerated for driving under the influence, third or subsequent offense. He was on probation on November 9, 2002, the day Chaffin visited the home and found appellant intoxicated and the day Blankenship saw him buy beer and drive away despite the fact that he was violating his probation by drinking and by driving. Davis acknowledged that appellant had been drinking since his release from incarceration. After November 9, 2002, Irby encouraged appellant to enter the Arise residential program. Irby offered to coordinate the program and accompany appellant to the initial intake appointment. Irby told appellant the program would help him and that it was important for him to participate in the program in trying to get his children back. Appellant refused, stating that he already attended AA meetings and did not need a residential program. The Department of Social Services is not required to "force its services upon

an unwilling or disinterested parent." <u>Harris v. Lynchburg Div. of Soc. Servs.</u>, 223 Va. 235, 243, 288 S.E.2d 410, 415 (1982).

Pursuant to Code § 16.1-283(C), the trial court may terminate a parent's parental rights if, based upon clear and convincing evidence, it is in the children's best interest and if the parent without good cause has been unwilling or unable within a reasonable period of time to remedy the conditions which led to or required continuation of foster care, notwithstanding reasonable and appropriate efforts of services agencies. Appellant was offered extensive services to enable him to remedy the conditions that led to the children's placement into foster care. Appellant's drinking and driving on November 9, 2002, during the time of his children's visitation, led to the return of his children to foster care. Although appellant attended some parenting classes, he refused to go to the Arise program and stopped verifying his attendance at AA meetings. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." <u>Kaywood v. Halifax County Dep't of Soc. Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

This record supports the trial court's finding that the best interests of the children would be served by terminating appellant's parental rights pursuant to Code § 16.1-283(B) and (C). It is apparent that appellant has been unwilling to remedy the conditions that require continuation of the children's foster care placement. Accordingly, we summarily affirm the judgment. <u>See</u> Rule 5A:27.

<u>Affirmed.</u>